SHANNON, C. J.
(concurring in judgment of reversal but not in majority opinion).
I respectfully dissent from the majority opinion in this case.
The problem in connection with this suit was to ascertain the true ownership of some 6500 acres of land in Pasco County registered in the name of Mabry Corporation. Title to this land was acquired by Meredith E. Dobry and Mabel J. Dobry under a contract entered into by them with Dunham Livestock, Inc., in February, 1954. The Dobrys had purchased all of the assets that they traded for the approximately 6500 acres of land at various prices during a course of time so that their actual cash investment in it did not exceed $62,000. Having acquired this approximately 6500 acres, the Dobrys decided to build a new home on some 6 acres, which they estimated would cost them $25,000 to $30,000. Magurno had an office in Clearwater, and Dobry, while driving from St. Petersburg to Clearwater, happened to see Magurno’s name on a sign. He alleges that he assumed that Magurno was in a highly liquid financial condition in view of the fact that he had just sold the Bahamas Shore and Yacht Club in St. Petersburg. So, his testimony is to the effect that the purpose in seeing Magurno was to determine the possibility of borrowing from him the money necessary to enable Dobry to build his house. Irrespective of whether he wanted to borrow money, he, in company with his wife, and Magurno finally decided to develop the entire tract of land, and for that purpose Magurno caused to be organized a corporation known as Mabry Corporation. The Dobrys deeded their land to the corporation and Magurno paid to the Dobrys the sum of $31,000, followed by payments totaling approximately $19,000 for taxes, expenses, etc. In the testimony it is Magurno’s position that the $31,000 paid to the Dobrys was exactly one-half of the amount of money that the Dobrys had invested and entitled him to a one-half interest in the land which they were going to develop. Dobry, on the other hand, takes the position that there had been a failure of consideration for the reason that Magurno had breached his agreement to develop the land. Dobry additionally charges Magurno with fraud and asserts that the transaction amounted to a loan of money by the Magurnos to the Dobrys. The stock of the corporation was divided equally between the Dobrys and the Ma-gurnos and Magurno was named as president, Elsie A. Magurno as vice president and Mabel J. Dobry as secretary-treasurer. The two Dobrys and the two Magurnos were named as directors. The charter of the corporation bore date of October 18, 1954, and stated that each of the Magurnos held 25 shares and each of the Dobrys ■held 25 shares, but no certificates were ever issued and no minutes were kept.
A portion of Dobry’s testimony is aptly condensed in his brief, as follows:
“Magurno told Dobry they would have to have a railroad extended to the property before development could begin, and asked Dobry to see about obtaining such a railroad. Although Magurno had promised to attend to all of the development details, Dobry was glad to cooperate in any way he could and set forth as requested in quest of having a railroad extended to the property. He soon learned — which Magurno doubtless knew all along— that such a project was absurd in the extreme and utterly impossible, without prohibitive expense and so reported to Magurno. After stalling and delaying for several months, Magurno announced to Dobry that the property couldn’t be developed without a railroad, and that they might as well sell it. * * * No sale of the property was made, and Magurno soon suggested that the property be divided up, one-half to be conveyed to Dobry and one-half to Magurno. Dobry still thought he was powerless to do anything except -follow Magurno’s wishes, *340 so a survey was started to divide the property into two equal portions. However, as time went on Dobry finally became aware of the fact that he was being- defrauded and decided to consult an attorney. The attorney advised him not to go through with the proposed division of the property, and this litigation resulted.”
In his final decree, the chancellor found from all of the testimony:
“1. That the shares of stock of the MABRY CORPORATION, a Florida corporation and one of the Plaintiffs herein, are evenly divided into two independent interest, i. e., SO percent in JAMES F. MAGURNO and ELSIE A. MAGURNO, his wife, and SO percent in MEREDITH E. DOBRY, individually, and MEREDITH E. DO-BRY as Executor of the Estate of MABEL J. DOBRY, deceased, and that the number of directors of said corporation is uneven, and the two halves of the ownership are unable to agree on successor directors and on the management of the corporation; and said corporation should be dissolved;
“2. That as the corporation has no debts, and no assets except those herein described and ordered distributed, it is unnecessary to appoint a received [sic] or trustee of the corporation for the prupose [sic] of dissolution, or for the settlement of the unfinished business of the corporation;”
And in the decretal portion thereof the chancellor ordered that the assets of the Mabry Corporation be distributed among the stockholders as follows:
“(b) To the Plaintiffs, JAMES F. MAGURNO and ELSIE A. MAGUR-NO, his wife, an undivided one-third (i/j) interest in all of the balance of the real estate owned by said corporation as above described, they being hereby declared the legal owners in fee simple of said undivided one-third (1/3) interest;
“(c) To the Defendant, MEREDITH E. DOBRY, individually, and [sic] undivided one-third (1/3) interest in all of the balance of the real estate owned by said corporation as above described, he being hereby declared the legal owner in fee simple of said undivided one-third (]/$) interest;
“(d) To the Defendant MEREDITH E. DOBRY, as Executor of the Estate of MABEL J. DOBRY, Deceased, an undivided one-third ((4) interest in all of the balance of the real estate owned by said corporation as above described, he being hereby declared the legal owner in fee simple of said undivided one-third (1/3) interest;”
From the conflicting testimony, the chancellor found that the Magurnos should have a one-third interest and the Dobrys a two-thirds interest in the real property involved in the litigation. Still, the chancellor found that the ownership of the Mabry Corporation was evenly divided into two independent interests between the Magurnos and the Dobrys. There was no finding or explanation by the chancellor as to this inconsistency regarding the corporate ownership on the one hand and the division of the corporate assets, upon dissolution, on the other hand. Since the evidence is in conflict as to the intentions of the parties, I do not believe that the portion of the decree finding the Magurnos to be entitled to a division of the land should be disturbed because the record contains ample evidence to support this finding. The record, however, does not, in my view, support the proportions used by the chancellor in his division of the real property and I would reverse that portion of the final decree and remand with directions that the chancellor enter an order dividing the land fifty per cent to the Magurnos; twenty-five per cent to Dobry, individually; *341 and twenty-five per cent to Dobry, as executor of his late wife’s estate.